UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GENESA MENDES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 23-10417-FDS |
| | ) | |
| WINNCOMPANIES LLC and | ) | |
| JOHN KUPPENS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO DISMISS**

**SAYLOR, C.J.**

This is an action for workplace discrimination and retaliation. Plaintiff Genesa Mendes has brought suit against her former employer, defendant WinnCompanies LLC, and her former supervisor, John Kuppens. The complaint asserts claims for intentional infliction of emotional distress, discrimination based on sex, discrimination based on race, failure to accommodate disability, interference with rights under the Family and Medical Leave Act, violation of the Equal Pay Act, violation of the Massachusetts Paid Family and Medical Leave Act, and retaliation.

Defendants have moved to dismiss the complaint in part for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). For the following reasons, the motion will be granted in part and denied in part.

I.      **Background**

    A.      **Factual Background**

The facts are set forth as alleged in the complaint.

According to the complaint, Genesa Mendes is a "female, dark-skinned, Black woman" and a "qualified handicapped person" who suffers from post traumatic stress disorder (PTSD), depression and anxiety. (Compl. ¶ 7, 8). In 2008, she was hired by Maloney Property Management, the predecessor of WinnCompanies. (*Id.* at ¶ 9).[1] Mendes worked at WinnCompanies from 2008 to 2019 under the direct supervision of different executive vice presidents. (*Id.* at ¶ 10). During that time period, according to the complaint, she "received positive performance evaluations throughout, and consistently received bonuses for meeting her yearly goals. (*Id.* at ¶ 11). She was also promoted at least twice from Senior Property Manager to Executive Property Manager, and from Executive Property Manager to Regional Vice President for the Northeast Region. (*Id.* at ¶ 9). In addition to her work as Regional Vice President, Mendes served a member of the Diversity, Inclusion, and Equity Committee at the company. (*Id.* at ¶ 42).[2]

In approximately April 2019, John Kuppens became Executive Vice President of the Northeast Region for WinnCompanies. (*Id.* at ¶ 12). As a result, he also became Mendes's direct supervisor. (*Id.*). The complaint alleges that Kuppens had a "reputation for treating people of color differently than white individuals, and for treating light-skinned people of color preferentially to dark-skinned people of color." (*Id.* at ¶ 13). As one example of that behavior, it

---

[1] WinnCompanies LLC "took over property management for Maloney Property Management" in October 2008. (Compl. ¶ 9).

[2] As a member of the Diversity, Inclusion, and Equity Committee, Mendes had access to the company's alleged "lopsided employment statistics" concerning the "hiring and retention of women and Blacks." (*Id.* at ¶ 42). Mendes alleges that "[i]n Vice President positions, women and Blacks made up less than 5% of the employees" at WinnCompanies. (*Id.* at ¶ 43).

alleges an instance in 2019 when Kuppens "recruited a white senior property manager for a special project." (*Id.* at ¶ 14). When the white manager ultimately did not take the job, Mendes recruited a Hispanic senior property manager. (*Id.* at ¶ 15). According to the complaint, Kuppens "refused to pay [the Hispanic manager] the same amount as the white candidate." (*Id.*). As another example, it alleges that Kuppens held Mendes "disproportionately . . . responsible for issues for which others not in her protected class would have been overlooked or downplayed." (*Id.* at ¶ 17). In particular, it alleges that her "small mistake[s]" were "blown up," while Kuppens was "not so critical of lighter-skinned workers." (*Id.*).

The complaint further alleges that Mendes was promised in 2019 by Kuppens that "she would be promoted to Divisional Vice President by January 2020, so long as her performance was acceptable." (*Id.* at ¶ 17). Nevertheless, he "did not promote her or even tell her why." (*Id.* at ¶ 18). In addition, although Mendes received a performance review in 2019 from Kuppens "with a rating of 'meets expectations' . . . she received between 85% and 92% of her available bonus compensation for achievement-to-goals performance for that year." (*Id.*).

According to the complaint, on July 27, 2020, Mendes discussed a plan with Kuppens concerning her relocation to North Carolina due to the COVID-19 pandemic and her need to care for relatives who lived in the state. (*Id.* at ¶ 20-21). They agreed that she would work remotely while returning to Massachusetts for at least one week per month. (*Id.* at ¶ 22-23). On August 20, 2020, Kuppens allegedly informed Mendes "that she would need to take a 'cost of living' pay decrease as a result of her relocation to North Carolina." (*Id.* at ¶ 24). Mendes objected to that decrease, bringing a complaint to Human Resources on August 25, 2020. (*Id.* at ¶ 27). Her pay was decreased, however, by $14,000 per year. (*Id.*). The complaint alleges that "no other white, male Regional or Senior Vice President had to take a pay decrease for relocating," including

Brian Leverone, a Divisional Vice President, who "was able to commute to his position in New York from Boston without a pay cut." (*Id.* at ¶ 28-29).

The complaint alleges that on May 10, 2021, Mendes made a "request[] to utilize the Family and Medical Leave Act ('FMLA') in connection with her ongoing depression, anxiety, and Post-Traumatic Stress Disorder." (*Id.* at ¶ 30). It alleges that these conditions were being "exacerbated" by her job and, more specifically, her treatment by Kuppens. (*Id.*). Although her leave request was granted, Kuppens allegedly asked Mendes to "work for him on several occasions while she was on leave." (*Id.* at ¶ 31). He "required her to provide monthly statistical reports on all of the properties and staff in her portfolio while she was on leave, starting in June 2021." (*Id.* at ¶ 21). In addition, he allegedly "requested statistics on the number of employees in her portfolio who had been diagnosed with COVID-19" and "would call her just before a meeting began to ask her opinion about how to proceed." (*Id.*). The complaint alleges that Mendes felt "obligated" to work while she was on leave under the FMLA "[d]espite not wanting to work" during that time. (*Id.* at ¶ 33).

Finally, according to the complaint, Mendes was informed during her leave on August 26, 2021, that "she would be losing one of her largest property management portfolios, Madison Park Village, as a result of complaints or concerns that the property owners and mangers had raised about her to WinnCompanies." (*Id.* at ¶ 35). Until that time, Mendes had been the only person at WinnCompanies to manage Madison Park. (*Id.* at ¶ 36). Because she had a "16-year relationship" with the client, Mendes contacted the Madison Park CEO. (*Id.* at ¶ 38). According to the complaint, she learned that Madison Park had never actually requested that WinnCompanies remove her from the project. (*Id.*). In fact, Madison Park allegedly asked Mendes to "remain on it." (*Id.*). Nonetheless, according to the complaint, WinnCompanies

4

assigned a new portfolio manager to the project who was a younger "light-skinned Hispanic woman" with "no real experience in large portfolio management." (*Id.* at ¶ 40). Mendes was allegedly promised that "she would receive a similar portfolio to replace the one that was taken from her," but she never did. (*Id.* at ¶ 41).

The complaint alleges that on December 8, 2022, Mendes was "forced to resign [from WinnCompanies] rather than return to a hostile environment. (*Id.* at ¶ 44).

B.  **Procedural Background**

On December 7, 2022, plaintiff filed this action in the Suffolk County Superior Court. She filed a first amended complaint on January 30, 2023.

On February 21, 2023, defendants removed the case to this court on the basis of federal-question jurisdiction. Defendants moved to dismiss the first amended complaint on February 28, 2023; plaintiff responded on March 9, 2023, with a motion to file a second amended complaint. Plaintiff's motion was granted, and defendants' motion to dismiss was denied without prejudice to its renewal.

On April 25, 2023, plaintiff filed a second amended complaint alleging (1) intentional infliction of emotional distress against all defendants, (2) discrimination based on sex in violation of Mass. Gen. Laws ch. 151B, § 4(1), against WinnCompanies, (3) discrimination based on race in violation of Mass. Gen. Laws ch. 151B, § 4(1), against WinnCompanies, (4) retaliation in violation of Mass. Gen. Laws ch. 151B, § 4(4), against all defendants, (5) failure to accommodate disability in violation of Mass. Gen. Laws ch. 151B, § 4(16), against WinnCompanies, (6) interference with rights under the Family and Medical Leave Act in violation of 29 U.S.C. § 2615, against WinnCompanies, (7) violation of the Equal Pay Act, Mass. Gen. Laws ch. 149, § 105A, against WinnCompanies, (8) violation of the Massachusetts Paid Family and Medical Leave Act, Mass. Gen. Laws ch. 175M, § 9, against WinnCompanies,

5

and (9) retaliation in violation of 42 U.S.C. § 2000e-3 *et seq.*, against WinnCompanies.

Defendants have moved to dismiss the claim for intentional infliction of emotional distress (Count 1), claims arising under Mass. Gen. Laws ch. 151B, §§ 4(1) and 4(4) (Counts 2, 3, and 4), the claim for failure to accommodate disability in violation of Mass. Gen. Laws ch. 151B, § 4(16) (Count 5), and the claim for retaliation under 42 U.S.C. § 2000e-3 *et seq.* (Count 9).

## II.   Standard of Review

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III.   Analysis

### A.   The Claim for Intentional Infliction of Emotional Distress (Count 1)

Count 1 alleges that defendants' actions constitute intentional infliction of emotional

distress.  Defendants contend that that claim is barred by the Workers' Compensation Act ("WCA"), Mass. Gen. Laws ch. 152.

Under Massachusetts law, the WCA provides the exclusive means by which an employee can recover for personal injuries sustained in the course of and arising out of his or her employment, including claims for intentional infliction of emotional distress.  Mass. Gen. Laws ch. 152, § 24; *Dorn v. Astra USA*, 975 F. Supp. 388, 395 (D. Mass. 1997) (citing *Green v. Wyman–Gordon Co.*, 422 Mass. 551, 558 (1996)); *see also Andresen v. Diorio*, 349 F.3d 8, *16 (1st Cir. 2003).  Common-law actions are barred by the exclusivity provision of the WCA where (1) the plaintiff is shown to be an employee, (2) her condition is shown to be a personal injury within the meaning of the compensation act, and (3) the injury is shown to have arisen out of, and in the course of, her employment.  Mass. Gen. Laws ch. 152. § 26; *Saab v. Massachusetts CVS Pharmacy, LLC*, 452 Mass. 564, 569–70 (2008).

Here, plaintiff does not dispute that she was an employee of WinnCompanies and that her emotional distress is a personal injury within the meaning of the WCA.  Nevertheless, she contends that her injury did not arise out of, and in the course of, her employment.  She alleges that defendants' decisions "to reduce her salary without her permission" or "contact[] her on numerous occasions while she was out on medical leave" concerning work matters, for example, "should be considered, a priori outside the scope of . . . employment" because they fall outside of "the expected risk of doing business."  (Docket No. 18, 12).

The WCA, however, "covers broadly any injury that arises out of the employment relationship."  *Diorio*, 349 F.3d at *16.  Under Massachusetts law, a personal injury is sustained in the course of employment if it "arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects."  *Doe v.*

*Purity Supreme, Inc.*, 422 Mass. 563, 566 (1996) (quoting *Caswell's Case*, 305 Mass. 500, 502 (1940).  Here, the alleged emotional distress suffered by plaintiff was clearly a personal injury arising out of and in the course of her employment.  Indeed, the entire premise of plaintiff's claim is that she suffered emotional distress, including the exacerbation of her depression, anxiety, and PTSD, because of "her job" and her experience with her supervisor in the workplace.  (Compl. ¶ 30).  The emotional-distress claim against defendant WinnCompanies is thus barred by the WCA and will be dismissed.

Plaintiff's emotional-distress claim against defendant Kuppens is also barred by the WCA.  Claims against a fellow worker for the commission of an intentional tort are barred by the exclusivity clause of the WCA if committed within the course of the fellow worker's employment and in furtherance of the employer's interest.  *O'Connell v. Chasdi*, 400 Mass. 686, 690–91 (1987).  The complaint alleges that Kuppens was critical of plaintiff's mistakes (Compl. ¶ 17); promised her a promotion but ultimately did not give her one (*Id.* at ¶ 18); asked her to take a "cost of living" pay decrease when she relocated from Massachusetts to North Carolina (*Id.* at ¶ 24); contacted her about work during her medical leave (*Id.* at ¶ 31); and reassigned one of her properties to another portfolio manager (*Id.* at ¶ 35).  These actions were clearly related to Kuppens' position as plaintiff's supervisor and taken in furtherance of their employer's interest.  Accordingly, the emotional-distress claim against defendant Kuppens will be dismissed.

      **B.**      <u>**The Claims Arising Under Mass. Gen. Laws ch. 151B, §§ 4(1) and 4(4) (Counts 2, 3, and 4)**</u>

Defendants contend that plaintiff's Chapter 151B claims should be dismissed because they were not filed with the Massachusetts Commission Against Discrimination ("MCAD") within the relevant limitations period.  Plaintiff contends that defendants' actions constituted a single unlawful employment practice and that the "continuing violation" doctrine applies.

Counts 2, 3, and 4 assert claims under Mass. Gen. Laws ch. 151B, § § 4(1) and 4(4) for discrimination based on sex, discrimination based on race, and retaliation.  In Massachusetts, a claimant alleging discrimination under Chapter 151B "may maintain a civil action only if she has previously filed a timely complaint with the [MCAD]."  *Christo v. Edward G. Boyle Ins. Agency*, 402 Mass. 815, 816 (1988).  Massachusetts law requires that a Chapter 151B complainant file a complaint with the MCAD "within 300 days after the alleged unlawful conduct."  804 Mass. Code Regs. 1.04(3).

Plaintiff filed a complaint with the MCAD on March 22, 2022.  (Docket No. 14, 5). There is no question that any claim that she may have arising out of events occurring after May 26, 2021—300 days before the filing of her MCAD complaint—is timely.  Claims arising out of events before that date may also be timely under the "continuing violation" doctrine.

> The continuing violation doctrine is an equitable exception that allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims. This ensures that these plaintiffs' claims are not foreclosed merely because the plaintiffs needed to see a pattern of repeated acts before they realized that the individual acts were discriminatory.

*O'Rourke v. City of Providence*, 235 F.3d 713, 732 (1st Cir. 2001) (internal quotations and citations omitted).

Under federal law, a claim of a "continuing violation" is evaluated according to the following criteria:  (1) whether the subject matter of the discriminatory acts was sufficiently similar such that there was a substantial relationship between the otherwise untimely acts and the timely acts; (2) whether the acts were isolated and discrete or occurred with frequency or repetitively or continuously; and (3) whether the acts were of sufficient permanence that they should have triggered an awareness of the need to assert one's rights.  *See O'Rourke*, 235 F.3d at

731. The "continuing violation" doctrine does not apply if, at the relevant time, plaintiff was or should have been aware of the discriminatory practice. *Sabree v. United Bhd. of Carpenters & Joiners Local No. 33*, 921 F.2d 396, 401-02 (1st Cir. 1990).

Under Massachusetts law, a plaintiff can establish a continuing violation by showing that (1) at least one discriminatory act occurred within the limitation period, (2) the alleged timely discriminatory acts have a substantial relationship to the alleged untimely discriminatory acts, and (3) earlier violations outside the limitations period did not trigger the plaintiff's "awareness and duty" to assert her rights. *Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination*, 441 Mass. 632, 642-43 (2004). When a plaintiff brings a claim based on an alleged hostile work environment, the limitation period begins to run when "the plaintiff knew or reasonably should have known that her work situation was pervasively hostile and unlikely to improve." *Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 539 (2001).

The "continuing violation" doctrine may have particular force in the context of a claim of hostile work environment.

> A plaintiff usually will not have a viable claim of hostile work environment from single acts that are isolated or sporadic or not themselves severe enough to alter the work environment and create an abusive work environment—both from an objective and subjective viewpoint. Or they may not of themselves appear to be discriminatory. But the recurrence of events that do not of themselves appear to be discriminatory may, over time, come to demonstrate both an increasingly difficult environment and that the events lack an innocent explanation. A plaintiff may be unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern.

*O'Rourke*, 235 F.3d at 732 (internal quotations and citations omitted).

Here, plaintiff's claims under Mass. Gen. Laws ch. 151B, §§ 4(1) and 4(4) are time-barred. Those claims arise primarily out of events that allegedly occurred in 2019 and 2020: plaintiff's low bonus in 2019 (Compl. ¶ 18), the failure to promote her as promised in 2020 (*Id.*),

10

and her salary reduction in 2020 (*Id.* at ¶ 24-27).  In fact, the only allegations in the complaint concerning events that occurred after May 26, 2021, involve Kuppens's contacts with plaintiff during her FMLA leave (*Id.* at  ¶ 31-32) and her loss of the Madison Park Village portfolio (*Id.* at ¶ 35-39).

The "continuing violation" doctrine does not apply for at least two reasons.  First, as set forth above,  the doctrine does not apply if earlier violations outside the limitations period reasonably should have triggered plaintiff's awareness that her rights had been violated.  Assuming the truth of the allegations in the complaint, plaintiff was aware of the alleged discriminatory practices no later than August 25, 2020, when she filed a complaint with Human Resources after Kuppens had decreased her pay.  Despite that awareness, she failed to file a complaint with the MCAD until March 22, 2022.

Second, the complaint fails to allege a substantial relationship between the timely and untimely acts.  It is not clear from the complaint that there is *any* connection between the acts that predate and postdate May 26, 2021.  Instead, each allegation seems to constitute a "discrete act[]" occurring on a "particular day."  *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  Discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire." *Morgan*, 536 U.S. at 114.  According to the First Circuit, "denial of a reasonable accommodation, the failure to renew a contract, a change of supervisor, a relocation to another floor, a transfer to another office, and the failure to assign work to an employee" are likewise discrete acts.  *Ayala v. Shinseki*, 780 F.3d 52 (1st Cir. 2015); *see also Miller v. New Hampshire Dep't of Corr.*, 296 F.3d 18, 22 (1st Cir. 2002) (describing a "letter of warning and [negative] performance evaluation" as discrete acts).  It is "well established that the [continuing violations] doctrine does not apply to

'discrete acts' of alleged discrimination." *Tobin*, 553 F.3d at 130. As a result, the claims under Mass. Gen. Laws ch. 151B, §§ 4(1) and 4(4) are time-barred and will be dismissed.

### C. The Claim for Failure to Accommodate Disability in Violation of Mass. Gen. Laws ch. 151B, § 4(16) (Count 5)

The complaint asserts a claim against defendant WinnCompanies for failure to accommodate disability in violation of Mass. Gen. Laws ch. 151B, § 4(16). It alleges that defendant's "actions in requiring her to work during her leave constitute a failure to accommodate her disability." (Comp. ¶ 58). Defendant asserts that "[p]laintiff cannot avail herself of the rights under ch. 151B, § 4(16) because she was not a qualified handicapped person as defined by the law." (Docket No. 14, 14).

Under ch. 151B, an individual has a "handicap" if he or she (1) has a substantial impairment that substantially limits one or more major life activities; (2) has a record of such a physical or mental condition; or (3) is regarded by the employer as having such a condition. Mass. Gen. Laws ch. 151B, §§ 1(17); 1(20); and 4(16); *City of New Bedford v. Massachusetts Comm'n Against Discrimination*, 440 Mass. 450 (2003). "Major life activities" include "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." Mass. Gen. Laws ch. 151B, § 1(20). Whether a plaintiff is "handicapped" is a fact-intensive analysis and must be made on a case-by-case basis. *Calero–Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 20 (1st Cir. 2004). Similarly, whether a plaintiff's impairment "substantially limits" a major life activity requires a case-by-case analysis, as the term is not defined by statute. *See* Mass. Gen. Laws ch. 151B, § 1.

In addition to establishing that she is handicapped, plaintiff must establish that she was a "qualified handicapped person"—that is, that she was "capable of performing the essential functions of the position involved with reasonable accommodation." Mass. Gen. Laws ch. 151B,

12

§ 1(16); *Garcia–Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 646 (1st Cir. 2000). An "essential function" is a "fundamental job duty of the employment position the individual with a disability holds or desires." *Ward v. Massachusetts Health Research Institute*, 209 F.3d 29, 34 (1st Cir. 2000).

Here, the complaint alleges that plaintiff has PTSD, depression, and anxiety. (Compl. ¶ 8). The complaint also specifically alleges that these conditions "impact her major life functions of working and thinking." (*Id.*). There is no direct allegation that WinnCompanies was aware that plaintiff experiences those conditions. Nonetheless, the complaint does allege that plaintiff "requested to utilize the Family and Medical Leave Act for ongoing depression, anxiety, and Post-Traumatic Stress Disorder," and the "leave request was allowed." (*Id.* at ¶ 30). From that, it could be plausibly inferred that part of the process of requesting leave was advising her employer of these conditions.

Finally, the complaint alleges that plaintiff was "capable of performing the essential functions of her job with or without a reasonable accommodation." (*Id.* at ¶ 8). It alleges that she "received positive performance evaluations throughout" her time at WinnCompanies, and "consistently received bonuses for meeting her yearly goals." (*Id.* at ¶ 11).

Accordingly, the complaint sufficiently alleges that she was a "qualified handicapped person" and her claim against defendant WinnCompanies for failure to accommodate disability in violation Mass. Gen. Laws ch. 151B, § 4(16) will not be dismissed.

### D.      The Retaliation Claim Under 42 U.S.C. § 2000e-3 *et seq.* (Count 9)

In her opposition to defendants' partial motion to dismiss, plaintiff stated that she "withdraws her claim of Retaliation under Title VII." (Docket No. 18, 8 n.2). Accordingly, that claim will be dismissed.

## IV.    Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED as to Counts 1, 2, 3, 4, and 9, and otherwise DENIED.

**So Ordered.**

|  |  |
|---|---|
|  | /s/ F. Dennis Saylor IV |
|  | F. Dennis Saylor IV |
| Dated:  December 14, 2023 | Chief Judge, United States District Court |